THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
MIDLAND DIVISION

| | | |
|---|---|---|
| MICHAEL G. WYLES and JUDY E. WYLES, | § § § | 7-15-CV-155-DAE |
| Plaintiffs, | § § | |
| vs. | § § | |
| CENLAR FSB; OCWEN LOAN SERVCING, LLC; MACKIE WOLF ZIENTZ & MANN, P.C.; NATIONSTAR MORTGAGE, LLC. | § § § § | |
| Defendants. | § § | |

<u>ORDER GRANTING MOTION FOR SUMMARY JUDGMENT</u>

Before the Court is a Motion for Summary Judgment filed by

Defendant Mackie, Wolf, Zientz, and Mann, P.C. ("MWZM") (Dkt. # 10).

Plaintiffs Michael G. Wyles and Judy E. Wyles ("Plaintiffs") filed a response (Dkt.

# 13), and MWZM filed a Reply (Dkt. # 14).  Plaintiffs were represented by

counsel at the time the relevant pleadings were filed; the Court has since permitted

Plaintiffs' counsel to withdraw and they are currently proceeding pro se.  (Dkt.

# 31.)  Pursuant to Local Rule CV-7(h), the Court finds this matter suitable for

disposition without a hearing.

1

BACKGROUND

Plaintiffs originally filed suit against various defendants, including MWZM, in the 70th Judicial District Court of Ector County, Texas in 2012, raising various claims arising from alleged wrongful foreclosure acts taken by co-Defendant Ocwen Loan Servicing, LLC ("Ocwen").  (Dkt. # 1, Ex. B-1.) Defendant Taylor, Bean, & Whitaker Mortgage Corporation ("TBW"),[1] removed the suit to federal court on May 4, 2012, and the case was assigned to Judge Robert Junell.  Wyles et al. v. Taylor, Bean & Whitaker Mortg. Corp., et al., No. 7:12–cv–038 (W.D. Tex. 2012).  On August 9, 2012, Judge Junell granted a Motion to Remand to state court, finding that Plaintiffs raised "plausible" claims against MWZM, a non-diverse defendant, and that Defendants had not met their heavy burden of establishing that MWZM was improperly joined to the suit.  Wyles, No. 7:12–cv–038, Dkt. No. 38 at 10–12 (Aug. 10, 2012).  Subsequently, the suit was continued in state court.  On September 18, 2015, Plaintiffs filed a Third Amended Petition against Defendants, stating a claim under the Real Estate Settlement Procedures Act, codified at 12 U.S.C. § 2605, et seq.  ("Compl.," Dkt. # 4, Ex. B-60.)  Defendants timely removed to federal court, invoking this Court's federal question jurisdiction.  (Dkt. # 1.)

---

[1] TBW is no longer party to this suit.

According to the live complaint, Plaintiffs entered into a Promissory Note ("Note"), and Deed of Trust ("Deed of Trust"), securing the property at 3200 Blossom Lane, Odessa, Texas, 79762 (the "Property") with TBW on June 5, 2007. (Compl. ¶ 7; Dkt. # 2, Ex. B-32, at "Deed of Trust".)  Between August 2007 and September 2009, when Plaintiffs learned that TBW was involved in bankruptcy proceedings, Plaintiffs sent monthly mortgage payment checks to TBW.  (Id. ¶¶ 7–10.)  Plaintiffs allege that on August 10, 2009, their August 1, 2009 mortgage payment of $1,293.34 to TBW was processed by Colonial Bank, but was never applied to their account.  (Id. ¶ 10.)  Plaintiffs further allege that their September 2, 2009 payment, in the amount of $1,293.34, was not processed by Defendant Cenlar FSB ("Cenlar"), until October 19, 2009, and that their October 3, 2009 payment of $1,293.34 was not processed until December 2, 2009.  (Id. ¶ 9–10.)

According to Plaintiffs, Cenlar diverted $1,894.00 of Plaintiffs' mortgage payments into an escrow account for alleged failure to hold hazard insurance on October 27, 2009.  (Compl. ¶ 14.)  Plaintiffs claim that they received billing statements from Cenlar for September 2009 through January 2010, but that these statements never advised Plaintiffs that their August 2009 payment was not

credited to their account, or that $1,894.00 had been placed in an escrow account and not applied towards their monthly mortgage payment.[2]  (Id. ¶¶ 13–16.)

On February 25, 2010, Plaintiffs received notice from Cenlar that the Note and Deed of Trust was being transferred to Ocwen; on March 16, 2010, the loan was transferred.  (Compl. ¶¶ 14, 16.)  Plaintiffs claim they paid Ocwen $13,200.00 towards their mortgage between April 2010, and November 2010.  (Id. ¶ 17.)  In December 2010, Plaintiffs claim that they twice attempted to make mortgage payments to Ocwen, but that these payments were returned.  (Id. ¶ 18.) Plaintiffs state they spoke with an Ocwen representative on January 13, 2011, and were informed that the only issue with their mortgage was a lapse of insurance from March through June, 2010; the representative accepted a phone payment the same day.  (Id. ¶ 19.)  On April 20, 2011, Plaintiffs faxed Ocwen proof of insurance coverage for March through June, 2010.  (Id. ¶ 24.)

In February 2011, Plaintiffs claim they submitted four payments to Ocwen; three payments were returned, but a payment of $4,000.00 was accepted. (Compl. ¶¶ 20–22.)  According to Plaintiffs, they paid $5,450.76 towards their mortgage in March 2011, $1,184.36 in April 2011, and $2,725.38 in May 2011, pursuant to phone conversations with Ocwen.  (Id. ¶¶ 22–23, 26.)

---

[2] Despite the extended litigation, the entire record of which is before the Court, neither the statements, nor proof of payments, are part of the record.

According to Plaintiffs, they contacted Ocwen numerous times by phone during July 2011, and were informed on July 29, 2011 that the August and September, 2009 payments to TBW had never been credited to their account. (Compl. ¶ 33.) Plaintiffs state that they immediately faxed proof of payment to Ocwen. (Id.) On August 5, 2011, Plaintiffs received a Notice of Acceleration of Loan Maturity from MWZM, the movant in the instant motion, on behalf of Ocwen, setting a foreclosure date of September 6, 2011. (Id. ¶ 34; Dkt. # 2, Ex. B-32 at "Notice of Acceleration".) The foreclosure sale occurred on September 6, 2011, and the Federal Home Loan Mortgage Corporation purchased the Property from Ocwen Loan Servicing, LLC. (Dkt. # 10, Ex. A-2.) MWZM sent a letter notifying Plaintiffs of the sale, posted notice of the foreclosure sale, and represented Ocwen in the sale proceedings; there is no evidence before the Court indicating that MWZM was involved in the sale in any other capacity. (See, e.g., Dkt. # 10, Exs. A-1, A-2; Dkt. # 2, Ex. B-32 at "Notice of Acceleration".)[3]

_____

[3] Plaintiffs' live complaint contains additional information, included below. The purpose of this information is unclear, given that it occurred after the September 6, 2011 foreclosure sale:

In 2014, Ocwen transferred the loan to Nationstar Mortgage, LLC ("Nationstar"). (Compl. ¶ 36a.) On July 27, 2015, Nationstar allegedly sent a letter to MWZM advising MWZM, rather than Plaintiffs, that several requests for loan modification were denied. (Id. ¶ 36b.) Plaintiffs asked MWZM for a loan payoff amount and were not provided an answer. (Id.)

Plaintiffs raise the following causes of action against MWZM: (1) unreasonable debt collection practices in violation of the Texas Fair Debt Collection Practices Act, Texas Financial Code §§ 392.304(8) & (19)[4] (Compl. ¶¶ 43–45); (2) conspiring with Cenlar, Ocwen, and Nationstar to commit wrongful foreclosure and breach of contract (id. ¶¶ 46–47; 37–40); and (3) fraud (id. ¶¶ 51–55). Plaintiffs seek damages in the amount of $40,000, the alleged amount of lost home equity; damages for over-payments, late fees, medical expenses, lost time from work, discomfort and distress, exemplary damages, and attorneys' fees. (Id. ¶¶ 56, 54.) MWZM's instant motion for summary judgment raises the defense of attorney immunity, and alternatively argues that Plaintiff is not a consumer under the DTPA. (Dkt. # 10.)

## LEGAL STANDARD

Summary judgment is proper when the evidence shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251–52 (1986). The purpose of summary judgment is to dispose of factually unsupported claims and defenses. Celotex Corp. v. Catrett, 477 U.S. 317, 323–24 (1986).

---

[4] Plaintiffs claim MWZM was acting as a debt collector under Tex. Fin. Code § 392.01(7).

6

The moving party bears the initial burden of demonstrating the absence of any genuine issue of material fact. Celotex Corp., 477 U.S. at 323. If the moving party meets this burden, the non-moving party must come forward with specific facts that establish the existence of a genuine issue for trial. ACE Am. Ins. Co. v. Freeport Welding & Fabricating, Inc., 699 F.3d 832, 839 (5th Cir. 2012). In deciding whether a fact issue exists, the Court "may not make credibility determinations or weigh the evidence." Tibler v. Dlabal, 743 F.3d 1004, 1007 (5th Cir. 2014) (quoting Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000)). However, "[u]nsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment." Brown v. City of Hous., 337 F.3d 539, 541 (5th Cir. 2003). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Hillman v. Loga, 697 F.3d 299, 302 (5th Cir. 2012) (quoting Matsuhita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)).

## ANALYSIS

MWZM alleges that all of Plaintiffs' claims are based upon actions it took within the scope of its foreclosure representation of Ocwen and that all claims against it are accordingly barred by attorney immunity. (Dkt. # 10 ¶¶ 9–11.) In the state of Texas, "attorneys are immune from civil liability to non-clients 'for actions

7

taken in connection with representing a client in litigation.'"  Cantey Hanger, LLP
v. Byrd, 467 S.W.3d 477, 481 (Tex. 2015) (quoting Alpert v. Crain, Caton &
James, O.C., 178 S.W.3d 398, 405 (Tex. App. 2005)).  This doctrine is quite clear;
its purpose is to protect "the public's . . . interest in loyal, faithful and aggressive
representation by the legal profession."  Van Hauen v. Wells Fargo Bank, N.A., No.
4:12–cv–344, 2012 WL 4092590, at *2 (E.D. Tex. Aug. 16, 2012) (quoting Reagan
Nat'l Adver. of Austin, Inc. v. Hazen, No. 03–05–0699–cv, 2008 WL 2938823, at
*2 (Tex. App. July 29, 2008)).  Attorney immunity does not grant attorneys the
right to violate ethical rules, but merely limits third-party recovery against
attorneys acting within the scope of their representative capacity.   "[O]ther
mechanisms are in place to discourage and remedy [wrongful] conduct, such as
sanctions, contempt, and attorney disciplinary proceedings."  Byrd, 467 S.W.3d at
482; see also Renfroe v. Jones & Assocs., 947 S.W.2d 285, 287 ("If an attorney's
conduct violates his professional responsibility, the remedy is public, not private.").

        Attorney immunity is not unlimited, and "attorneys are not protected
from liability to non-clients for their actions when they do not qualify as 'the kind
of conduct in which an attorney engages when discharging his duties to his client.'"
Byrd, 467 S.W.3d at 482 (quoting Dixon Fin. Servs. v. Greenberg, Peden,
Siegmyer & Oshman, P.C., No. 01–06–00696–CV, 2008 WL 746548, at *8 (Tex.
App. March 20, 2008)); see also Van Hauen, 2012 WL 4093590 at *3 ("Whether

immunity attaches turns on the type of conduct in which the lawyer is engaged"
(quoting <u>Hazen</u>, 2008 WL 2938823, at *2).).

"Under Texas law, legal counsel for a mortgage servicer with
authority to service a mortgage may deliver notices of default and foreclosure
proceedings in the course of its legal representation of the servicer." <u>Bitterroot
Holdings, LLC v. MTGLQ Inv'r, L.P.</u>, No. 5:14–cv–862, 2015 WL 363196 (W.D.
Tex. Jan. 27, 2015). Likewise, providing a homeowner with notification that the
mortgage is being accelerated falls within the scope of a law firm's legal
representation of the mortgage servicer. <u>Givens v. Midland Mortg. Co.</u>, 393
S.W.3d 876, 880–881 (Tex. App. 2012).

Plaintiffs argue that the doctrine of attorney immunity does not apply
here, because MWZM acted as a debt collector rather than as legal counsel in
connection with the foreclosure. (Dkt. # 13 ¶ 7.) Plaintiffs produce two
documents they allege support this allegation. The first document is a sworn
affidavit from Plaintiffs' daughter, dated May 31, 2012, stating that she contacted
MWZM on multiple occasions in February 2012 attempting to discuss her parents'
loan; she often reached an answering machine stating "[p]lease be advised this law
firm is a debt collector attempting to collect a debt and any information we obtain
will be used for that purpose." (Dkt. # 13-1 at 2.) The second document is the
Notice of Acceleration Plaintiffs received on August 5, 2011; the bottom of the

notice includes the following statement: "**THIS FIRM IS A DEBT COLLECTOR ATTEMPTING TO COLLECT THE DEBT AND ANY INFORMATION OBTAINED BY IT WILL BE USED FOR THAT PURPOSE.**" (Id. at 4).

These two statements are consistent with language in the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 et seq., which requires any entity involved in debt collection, including a law firm practicing in the field of consumer debt collection, to disclose that it "is attempting to collect a debt and that any information obtained will be used for that purpose." 15 U.S.C. § 1692d(11); see Eads v. Wolpoff & Abramson, LLP, 538 F. Supp. 2d 981, 986 (W.D. Tex. 2008). While such generic statements may be confusing to Plaintiffs, they do not, without more, support a finding that MWZM was acting outside the scope of its legal duties in this particular case.

Absent any evidence that MWZM actually attempted to collect mortgage payments from Plaintiffs or otherwise exceeded the scope of its legal representation to Plaintiffs, this Court cannot find that MWZM is barred from receipt of attorney immunity. The two statements Plaintiffs have brought to the Court's attention, neither of which was directed specifically towards Plaintiffs, are

insufficient to create a genuine issue of material fact at this stage.[5]  While MWZM may have acted as a debt collector in other situations, Plaintiffs do not allege any facts, nor do they proffer any evidence, that MWZM ever made a demand for payment or acted beyond the scope of their legal representation of Ocwen in any way in this specific situation.

        Additionally, Plaintiffs argue that Judge Junell found there was a genuine issue of material fact as to whether MWZM was acting as a debt collector, rather than as foreclosure counsel when he remanded the case to state court in 2012. (Dkt. # 13 ¶ 8.)  This is a misunderstanding of Judge Junell's order, which evaluated Plaintiffs' claims against MWZM, as well as the affidavit and letter produced again here as summary judgment evidence, under the Motion to Dismiss standard, finding that Plaintiffs' claim against MWZM was plausible.  Wyles, No. 7:12–cv–038, Dkt. No. 38 at 10–12 (Aug. 10, 2012).   Here, nearly three years after Judge Junell's order was filed, Plaintiffs present no additional facts or evidence to support their claim that MWZM acted as a debt collector in this specific case.  "Unsubstantiated assertions . . . are not sufficient to defeat a motion

--------------------------------

[5] Despite the fact that this matter has been litigated for nearly four years, the extensive record is almost entirely non-substantive, and is largely made up of motions filed before various courts, responsive court orders, and the repeated filing of an order from the Southern District of Texas.  See Charles v. Ocwen Loan Servcing, LLC, No. H–11–4115, 2012 WL 896451 (S.D. Tex. March 15, 2012) (remanding a similar foreclosure case to state court after finding a possibility of recovery against MWZM, a non-diverse defendant).

for summary judgment." <u>Brown</u>, 337 F.3d at 541.  Because the court finds that MWZM is entitled to immunity, it does not address its argument under the DTPA. Accordingly, the Motion for Summary Judgment should be **GRANTED** (Dkt. # 10).[6]

<u>CONCLUSION</u>

For the reasons stated above, MWZM's Motion for Summary Judgment is **GRANTED** (Dkt. # 10).  MWZM is entitled to attorney immunity in connection with the claims against it, and there are no claims remaining against it. Accordingly, the claims against MWZM are **DISMISSED WITH PREJUDICE**, and MWZM is no longer party to this lawsuit.

**IT IS SO ORDERED.**

**DATED:** Midland, Texas, April 20, 2016.

_____
David Alan Ezra
Senior United States Distict Judge

---

[6] To be clear, this Court's grant of attorney immunity to MWZM does not render any judgment as to the validity of Plaintiffs' claims against other Defendants party to this suit.